Mr. Justice James
delivered the opinion of the Court:
This cause has been heard here in the first instance upon a. motion in arrest of judgment. The defendant was- found guilty as indicted upon the following indictment:
*80 “The Grand Jurors of the United States of America, in and for the County and District aforesaid, upon their oath present that one Frederick Barber, late of the County and District aforesaid, on the twenty-third day of June, in the year of our Lord one thousand eight hundred and eighty-eight with force of arms at and in the County and District aforesaid, in and upon the body of one Agnes Watson, she, the said Agnes Watson, in the peace of God and of the United States of America, then and there being, feloniously, willfully and of his malice aforethought, did make an assault; and that the said Frederick Barber then and there feloniously, willfully and of his malice aforethought, did take the said Agnes Watson into both the hands of him, the said Frederick Barber, and did then and there feloniously, willfully and of his malice aforethought, cast, throw and push the said Agnes Watson into a certain canal there situate, wherein there then was a great quantity of water, by means of which casting, throwing and pushing of the said Agnes Watson in the canal aforesaid by the said Frederick Barber, in the manner and form aforesaid, she, the said Agnes Watson, in the canal aforesaid, with the water aforesaid, was then and there mortally choked, suffocated and drowned.
“And so the Grand jurors aforesaid, upon their oath aforesaid, do say that the said Frederick Barber, her, the said Agnes Watson, in the manner and by the means aforesaid, feloniously, willfully and of his malice aforethought, did kill and murder, against the form of the statute in such case made and provided, and against the peace and Government of the United States of America.”
The grounds assigned in the motion are:
“ That nowhere upon the face of the indictment does it appear that the death of Agnes Watson is legally charged and stated; and because it does not appear upon the face of the indictment that the death of the said Agnes Watson occurred within the District of Columbia within a year and a day from the time of the alleged choking, suffocating and drowning.”
Some of the formal averments which used to be considered *81 necessary in a common law indictment for murder have been eliminated by the courts, because they did not help to state facts which it was necessary to prove in making out the crime; but wherever the common law system of criminal pleading obtains certain averments are still held to be indispensible. For example, the means by which the murder was committed must be stated. An allegation of one instrumentality will not be supported by evidence of another essentially different. If it be alleged that it was committed by stabbing, and it be shown that it was by poisoning or by drowning, the prisoner ;must be acquitted. 3 Chitty Crim. Law, 734; 2 Hale, 185. In •the next place, it must appear by the indictment that the means employed were of a homicidal character; otherwise ■the prisoner would be tried for an intentional killing, while charged only with the infliction of an injury not calculated to •cause death. Finally, it is necessary to allege that this act, •done with homicidal intent and in manner calculated to cause •death, actually accomplished its purpose.' Without this averment the accused would be tried for an actual killing, when he had only been charged with an act adapted and intended to cause that result.
These averments assumed in practice a fixed technical form. When, for example, the means employed was a stroke, the homicidal character of the act was stated by alleging that the stroke caused “ a mortal wound,” and the fact that this homicidal act accomplished its purpose was stated by a distinct allegation that the person injured died by means of that mortal wound. Finally, in order to show that the death could lawfully be charged to have been caused by the injury in question, it was necessary to stajte the time when it occurred ; that is to say a time within a year and a day following the injury; otherwise the prisoner would be tried for murder when the facts charged did not show a death that could be imputed to the act. Each of these averments must be made in order to state facts enough to justify the accusation of murder. As the Supreme Court of Massachusetts said in Commonwealth vs. Parker, 2 Pick., 558, " murder is a com *82 plex term, denoting several facts, of which the death of the-party is one of the most essential. The mortal stroke or the administering of poison, does not constitute the crime, unless-the sufferer dies thereof within a year and a day.” As to what amounts to an allegation of actual death, of death by means of the mortal injury, it is to be carefully observed that no degree of emphasis in stating the moral or fatal nature of. the prisoner’s act can make that statement amount to an averment that the injured person actually died; much less that he-died by that means. The sole office of that averment is tosíate that the prisoner’s act was ’homicidal; the result of that act, being a separate fact and element in the crime of murder, must be specifically averred. “ It is absolutely necessary,”' says Mr. Chitty, “to state that the party murdered died of the-injury that he received.” 3 Chitty, Crim. Law, 735.
In the light of these principles let us examine the indictment before us. The question in dispute is whether its concluding averment, “that the said Agnes Watson, in the canal, aforesaid, with the water aforesaid, was then and there mortally choked, suffocated and drowned,” is anything more than-the usual allegation that the injury done by the accused was of a homicidal character, and whether it is also in substance-an allegation of the fact that she then and there died by means of the said homicidal act.
It appears that when the injury was by choking, strangling- or suffocation, it was not the practice of the common law pleaders to aver that it was “ mortal.” Mr. Bishop says, in a. note to section 520 of his Directions and Forms : “ The general rule is distinct and fully established by authority, that the wound or other injury must, in felonious homicide, be alleged to have been ‘ mortal.’ And so, in general, are the precedents. But in those for choking and strangling, and in those-for suffocation, the fact is otherwise. I am not aware that the question of the necessity of this averment, in this particular class of cases, has been raised; but I have examined, with reference to it, a large number of the precedents before me, and I have not found one in which even the word ‘ mortal” *83 is used. Still, for the sake of caution, I have so shaped the form in the text as to obviate the objection. I see no reason in principle why the word ‘ mortal’ is not as essential in this case as in one of throat cutting. But' the whole structure of the indictment for felonious homicide is so technical that it is. not safe to reason much about it from principle.”
In accordance with this opinion as to the necessity of the word “ mortal,” Mr. Bishop inserts in the indictment for choking and strangling, a statement that the accused did give “ a. mortal pressure, choking and strangling,” section 520, supra; and, in section 523, he gives the following allegations as to. drowning: “And that the said A. * * * did then and there feloniously, willfully, and of her malice aforethought,, cast, throw and push the said X. into a certain pond there situate, wherein there then was a great quantity of water, by means of which casting, throwing and pushing of the said X. into the pond aforesaid by the said A. in form aforesaid, she,, the said X., in the pond aforesaid, with the water aforesaid,, was then and there [mortally] choked, suffocated and drowned.”
As a means of ascertaining how much ground Mr. Bishop-intended to cover by the last of the above averments, we must compare with them the following averments in Mr. Chitty’s form:
“And the said C. H. then and there feloniously, willfully and of his malice aforethought, did cast, throw and push the said M. H. into a certain pond there situate, wherein there was a great quantity of water, by means of which casting, throwing and pushing of the said M. H. in the pond aforesaid by the said C. H., in form aforesaid, she, the said M. H., in the pond aforesaid, with the water aforesaid, was then and there choked, suffocated and drowned, of which said choking, suffocating and drowning she, the said M. H., then and there instantly died; and so,” etc.
Now, in view of the general principle so copiously illustrated by the cases cited in Mr. Chitty’s notes, that the act charged against the accused must appear to have been of a *84 homicidal character, we must suppose that it was understood by the pleader and by the common law courts that an allegation that the said M. H. was “ choked, suffocated and •drowned,” was, without the addition of any qualifying epithet, a sufficient showing that the injury was of a homicidal character. We make this observation, not as a criticism upon Mr. Bishop’s doubts, but because it thus appears that it was held by the common law courts to be absolutely necessary, after having stated a fatal, mortal drowning, to allege specifically ■that the suffererer died by means of that drowning. Such specific allegation of death by that means was held to be indispensably necessary, manifestly because the allegation of a mortal drowning could not be interpreted to be an allegation that the party was then and there drowned by the accused until he was dead; and because it was definitively settled, as a matter of law, that an allegation of a mortal drowning, like an allegation of any other mortal injury, meant only that the accused had done an act which was adapted and intended to cause death. The averment of consequent death was added upon the principle that in all cases, without exception, it was necessary to allege that it was by that fatal injury that the subsequent death was in fact caused, however certain it might appear, as a matter of argument, that death must result from such an injury.
This principle applies as completely to Mr. Bishop’s form of averment, and to the closing averment of this indictment, as it does to the averment of choking and drowning as found in the usual common law form. The allegation of a mortal drowning is only a more positive allegation that the act of the accused was of a homicidal character and had a homicidal intent. It deals with the character and intent of his act, j ust as the older and less certain form of statement did, and does not purport in contemplation of the rigorous law concerning indictments for murder to refer to the actual consequences of that act and intention.
We understood at the argument that the indictment before us was intended to conform to Mr. Bishop’s suggested amend *85 inent, and that the pleader had assumed that the form given in section 523 was complete. It was assumed, that is to say, that Mr, Bishop had intentionally omitted the concluding averment of death by means of the alleged' mortal drowning, on the theory that his amended form covered the same ground. This was clearly a misapprehension of the learned author’s method. In section 521 he states distinctly that he was about to indicate, in the sections that immediately followed, the proper form of particular averments; and his observations both in the text and the notes, as well as his method of stating only particular clauses of an indictment, suggest that the further averment of consequent death was assumed to be understood.
By reason of this misapprehension we have an indictment which is purely experimental and without precedent.
We have been urgently reminded, nevertheless, that, ac-according to the dictionaries, and as employed in literature and in common speech, the word “drowned” meant death by submersion. We conceive that it is quite immaterial what that, word imports in common usage, inasmuch as the precedents of common law indictments for murder have, according to the decisions of the courts, told us authoritatively what it means when employed in this allegation. It is, by that dictionary, defined to mean an act adapted and intended to cause death. No other dictionary is relevant to the subject.
It was contended in argument, however, that the consequent death of the sufferer by means of the prisoner’s act is sufficiently averred in what is called the “conclusion” of the indictment. The scope and legal effect of this part of an indictment for murder were recently considered by the Supreme Court in the case of Ball et al. vs. The United States. That indictment was held bad because it did not allege the place of the death, and thereby show the jurisdiction of the trial court over the offense. The place of the death did appear in the conclusion, but the court took no notice of it as a fact alleged. No observation, it is true, is made of that feature of the indictment, but we must suppose that it did not *86 escape attention, and assume that it was held, according to the usual rule, that this part of an indictment contains only conclusions of law concerning the effect of the preceding allegations of fact, and cannot operate to supply defects in the statement of facts.
It is to be greatly desired that the law of criminal procedure and criminal pleading were more reasonable and more in accordance with common intelligence than it is; but, until it shall be made so by a power higher than ours, we can only apply it as we find it settled by precedent. With a few statutory exceptions, the whole body of that law is to be found in those repositories. And when we iook to precedents we do not recur to the formative period of criminal jurisprudence, but to that intermediate period in which, as is agreed by common consent, it was actually brought into its present form. Out of the circumstances of that period grew a degree of astuteness and rigor which have served the time of their usefulness. But if that rigor is often troublesome and sometimes may even defeat justice, it is not often necessary that it should work mischief. In the case before us it is not the rigor of the law of criminal pleading which had caused delay, but the unnecessary disregard of what might easily be complied with. Sufficient care and a faithful adherence to the precedents which are to be found in good authorities, will seldom fail to produce an indictment on which a crime can be safely and correctly tried. At all events, the evils charged to unnecessary elaboration are not to be cured by encouraging experiments and departures from well known and safe paths. Indictments have not yet come to be addressed to the intelligence or the interpretation of a jury; they are the guides of the court in determining what issues are submitted for trial; and it is for the courts to understand them according to rules of law which have been established concerning their meaning and their sufficiency. Judged by what we conceive to be these established rules, the allegation which is supposed by the prosecution to charge the accused with having caused the «death of Agnes Watson by drowning her, amounts only to a *87 •charge that he committed upon her an injury adapted and intended to effect that result. That act does not constitute murder, and the defendant has been convicted of a crime with which he has not beep charged.

Accordingly the motion in arrest of judgment is allowed, and .this cause is remanded.